UNITED STATES DISTRICT COURT FOR NORTHERN DISTRICT
OF FLORIDA, TALLAHASSEE DIVISION

STEVEN D. YOUNG #861067
Plaintiff,

V.

CASE NO.: _____

CORIZON, LLC.
WOODROW A. MYERS, JR.          JULIE L. JONES, Secretary, FDC
Chief Operating Officer         Official Capacity, Declaratory
Individual Capacity             And Injunctive Relief
RHONDA ALMANZA                           Defendants.
Vice-President of Operations, Region II
Individual Capacity,
HELEN SNEED,
Director Of Operations, Region II
Individual Capacity
TERESA WOODAL, Infectious Disease Control, Region II,
Individual Capacity,

## 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
## DECLARATORY AND INJUNCTIVE RELIEF
## JURY TRIAL SOUGHT

ERRON CAMPBELL
Medical Director,
Individual Capacity,
CENTURION OF FLORIDA, LLC.,
JOHN DOE #1-3,
Individual Capacity
E. PEREZ—LUGO,
Former, Chief Health Officer UCI
Individual Capacity,
THOMAS REIMERS,
Director Health Services,
Individual Capacity,
DANIEL CHERRY,
Centurion's Former Medical Director FDC.,
Individual Capacity
MICHELLE SCHOUEST, IISC,
Individual Capacity,

Page **1** of **24**

## I.    PLAINTIFF:

Name of Plaintiff:     STEVEN D. YOUNG
Inmate Number        #861067
Prison or Jail:  Union Correctional Institution
Mailing Address:     P. O. Box 1000
Raiford, Florida
32083

## II.    DEFENDANTS:

(1) CORIZON, LLC
Official Position: Former Contract Medical Provider For The FDC
Mailing Address:  12647 Olive Blvd.
St. Louis, Mis. 63141

(2) WOODROW A. MYERS, JR.  *
Official position: Chief Operating Officer,
Mailing Address: 103 Powell Ct., Brentwood, Tn. 37027
Individual Capacity

(3) RHONDA ALMANZA  *
Vice-President of Operations, Region II
Mailing Address: 950 West Elliot, Tempe, AZ. 85284
Individual Capacity

(4) HELEN SNEED  *
Official Position: Director Of Operations, Region II
Mailing Address: 2631 N.W. 33rd Place, Gainesville, Fla. 32605
Individual Capacity

(5) TERESA WOODAL  *
Official Position: Infectious Disease Control
2627 N.W. 43rd St. Suite 202 2nd Fl., Gainesville, Fla. 32606
Individual Capacity

*These Addresses and job titles were valid for service in 2017 as submitted to the U.S. District Court, Middle District, Jacksonville Division, Saleem v. Corizon # 3:15-cv-1195-TJC-PDB

(6) CENTURION Of FLORIDA, LLC
Official Position: Current Contract Medical Provider For The FDC
Paddock Park Prof. Bldg. 3200S.W. 34th Ave. Bldg. 700, Suite 701, Ocala, Fla. 34474

(7-10) JOHN DOE #1-3,
Official Position: Employee Centurion Of Florida, LLC.
Mailing Address: not yet identified.
Individual Capacity

(11) E. PEREZ—LUGO
Official Position: Former Chief Health Officer UCI
Mailing Address: 216 S.E. Corrections Way, Lake City, Fla. 32025-2013
Individual Capacity

(12) MICHELLE SCHOUEST, IISC,
Official Position: Impaired Inmate Services Coordinator
Mailing Address: 501 S. Calhoun St., Tall., Fla. 32399-2500
Individual Capacity

(13) THOMAS REIMERS,
Health Services Director,
Mailing Address: 501 S. Calhoun St., Tall., Fla. 32399-2500
Individual Capacity

(14) DANIEL CHERRY,
Centurion's Former Medical Director FDC
Paddock Park Prof. Bldg. 3200S.W. 34th Ave. Bldg. 700, Suite 701, Ocala, Fla. 34474
Individual Capacity

(15) ERRON CAMPBELL
Medical Director,
18 Huntleigh Ln., St. Louis Mo. 63131
Individual Capacity

(16) JULIE L. JONES,
Official Position: Secretary, FDC
501 S. Calhoun St., Tall., Fla. 32399-2500
Official Capacity, Declaratory & Injunctive Relief

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding condition or events in any prison, jail, or detention center. 42 U.S.C.§1997e(a).
Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal. Plaintiff has exhausted all available administrative grievances. Defendant Jones possesses all grievances filed in this matter.

## IV.    PREVIOUS LAWSUITS

NOTE FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

    A. Have you initiated other actions in <u>state court</u> dealing with the same or similar facts/issues involved in this action?
            Yes( )        No( XXX )

1. Parties to previous action:
  (a) Plaintiff(s): N/A
  (b) Defendant(s) N/A
2. Name of judge:  N/A Case #: N/A
3. County and judicial circuit: N/A
4. Appropriate filing date: N/A
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal: N/A
7. Facts and claims of case: N/A
  (Attach additional pages as necessary to list state court cases.)

B. Have you initiated other actions in federal court dealing with the same or *similar* facts/issues involved in this action?

Yes( XX )   No( )
1. Parties to previous action:
  (a) Plaintiff(s): Please see pages 4 "A"-"B"
  (b) Defendant(s) Please see pages 4 "A" -"B"
2. Name of judge: Case #: Please see pages 4 "A" -"B"
3. County and judicial circuit: Middle District, Jacksonville
4. Appropriate filing date: Please see pages 4 "A" -"B"
5. If not still pending, date of dismissal: please see pages 4 "A" -"B"
6. Reason for dismissal: 12 (b) (6) Failure to state a claim
7. Facts and claims of case: refusal to treat Hep "C", **pre** 2014 CDC guideline change.

  (Attach additional pages as necessary to list state court cases.) Please see pages 4 "A"

C Have you initiated <u>other actions</u> (*besides those listed above in Questions (A) and (B))* in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( X )  No( ) Please see pages 4"A"

If yes, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below:

  (a) Plaintiff(s): Petitioner Steven D. Young Please see pages 4 "A" -"B"
  (b) Defendant(s) Respondent: Secretary, FDC Please see pages 4 "A" -"B"
  2. Name of judge: Elizabeth A. Kovachevich  Case # Please see pages 4 "A" -"B"
  3. County and judicial circuit: U.S. District Court, Tampa Division
  4. Approximate  filing date: Please see pages 4 "A" -"B"
  5. If not still pending, date of dismissal:  Please see pages 4 "A" -"B"
  6. Reason for dismissal: Please see pages 4"A" -"B"
  7. Facts and claims of case: Unconstitutional conviction 28 USC §2254
  1. Parties to previous action: Please see pages 4 "A" -"B"
  (a) Plaintiff(s): Plaintiff(s): Petitioner Steven D. Young
  (b) Defendant(s) Respondent: Secretary, FDC Please see pages 4 "A" -"B"
  2. Name of judge: Elizabeth A. Kovachevich  Case #  see pages 4 "A" -"B"
  3. County and judicial circuit: U.S. District Court, Tampa Division

## CONTINUATION OF PAGE #4 "A"

Have you initiated <u>other actions</u> (*besides those listed above in Questions (A) and (B)*) in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( X )      No(   )

1. Parties to previous action: Steven D. Young, Defendant, State Of Florida
(a) Defendant Steven D. Young
(b) State Of Florida  #1981-CF-000869
2. Name of judge: can't recall
3. County and judicial circuit: Manatee, 12th Judicial Circuit
4. Approximate filing date: 1987
5. If not still pending, date of dismissal:  Don't recall
6. Reason for dismissal: Untimely
7 Facts and claims of case: Unconstitutional conviction, state habeas corpus

1. Parties to previous action: Steven D. Young Defendant(s) State Of Florida
(a) Petitioner: Petitioner Steven D. Young
(b) Defendant(s)  Respondent: Secretary, FDC
2. Name of judge: Elizabeth A. Kovachevich  Case # 8:90-CV-00976-UA
3. County and judicial circuit: U.S. District Court, Tampa Division
4. Approximate filing date: 1990
5. If not still pending, date of dismissal: don't recall
6. Reason for dismissal: state procedural bar of timeliness
7. Facts and claims of case: Unconstitutional conviction 28 USC §2254

1. Parties to previous action: Steven D. Young, Defendant,  State Of Florida
(a) Petitioner Steven D. Young, Defendant
(b) State of Florida
2. Name of judge: Don't recall
3. County and judicial circuit: Manatee, 12th Judicial Circuit
4. Approximate filing date: 1994
5. If not still pending, date of dismissal:  Don't recall
6. Reason for dismissal: Rule 3.800(a), resentenced
7 Facts and claims of case: illegal sentence

1. Parties to previous action: Steven D. Young, Defendant  State Of Florida
(a) Defendant Steven D. Young
(b) State Of Florida
2. Name of judge: Marc B. Gilner
3. County and judicial circuit: Manatee, 12th Judicial Circuit
4. Approximate filing date: 2010
5. If not still pending, date of dismissal:  denied 6-20-201, 2nd DCA #2D11-4057,
6. Reason for dismissal: untimely, refused to recognize actual innocence
7 Facts and claims of case: Unconstitutional conviction, state habeas corpus.

**CONTINUATION OF PAGE #4 "B"**

1. Parties to previous action: Steven D. Young, Petitioner(s), Secretary FDC
(a) Petitioner: Steven D. Young
(b) Respondent: Secretary, FDC
2. Name of judge: Elizabeth A. Kovachevich  Case # 8:13-cv-690-T-17TGW
3. County and judicial circuit: U.S. District Court, Tampa Division
4. Approximate  filing date: 2013
5 .If not still pending, date of dismissal:  2013
6. Reason for dismissal: state procedural bar of timeliness, refused to recognize actual innocence
7. Facts and claims of case: actual innocence, Unconstitutional conviction 28 USC §2254

1. Parties to previous action: Plaintiff Steven D. Young,
(a) Plaintiff(s): Steven D. Young
(b) Defendant(s) _____
2. Name of judge: can't recall
3. County and judicial circuit: U.S. District Court, Jacksonville.
4. Approximate  filing date: 2005
5. If not still pending, date of dismissal:  Don't recall
6. Reason for dismissal :rule 12 b (6)
7 Facts and claims of case: Refusal to treat Hep "C"

1. Parties to previous action: Steven D. Young,
(a) Plaintiff(s): Steven D. Young
(b) Defendant(s) _____
2. Name of judge: can't recall
3. County and judicial circuit: U.S. District Court, Jacksonville.
4. Approximate  filing date: 2008
5. If not still pending, date of dismissal: don't recall
6. Reason for dismissal :rule 12 b (6)
7 Facts and claims of case: Refusal to provide RDP diet

1. Parties to previous action: Steven D. Young, Secretary FDC
(a) Petitioner: Steven D. Young
(b) Respondent  Secretary FDC
2. Name of judge: Elizabeth A. Kovachevich
3. County and judicial circuit: U.S. District Court, Tampa, Fla.
4. Approximate  filing date: 2017
5. If not still pending, date of dismissal: don't recall
6. Reason for dismissal : treated as rehearing and denied
7 Facts and claims of case: Refusal to acknowledge actual innocence
Currently on review by the eleventh circuit court of Appeal  # 18-12896-A

Plaintiff, a terminally ill prisoner prays that his litigative history not prevent this suit from progressing. He incorporates the imminent danger exception of the Sworn Complaint and adds that both his prior civil suits while having been denied, were eventually resolved in favor of the

claims {but not Young} set forth by Plaintiff. Namely, that injunctive relief was awarded requiring the Secretary of the FDC to provide RDP diet to eligible offenders. In his other suit, the Hep C treatment sought by Plaintiff Young was before the FBOP guideline change of 2014, therefore not the same *core facts* as this current cause of action. Hepatitis C, FBOP-CDC changes in 2014 till date, were not in effect during Plaintiff's prior suit for care. The statute of limitations in this cause is limited to four (4) years.

Both of Young's prior suits should not be held to prevent IFP as both denials are no longer equitable. Moreover, the imminent danger exception in this cause is justified.

Plaintiff incorporates by reference the <u>Imminent Danger Exception & Prayer For Expedited Resolution</u> section of his Complaint, *infra*.

4.      Approximate filing date: Please see pages 4 "A" -"B"
5.      If not still pending, date of dismissal: Please see pages 4 "A" -"B"
6.      Reason for dismissal: Please see pages 4 "A" -"B"
7.      Facts and claims of case: Unconstitutional conviction 28 USC §2254
(b)     Defendant(s) Secretary, FDC Please see pages 4 "A" -"B"
2.      Name of judge: Don't recall     Case #: Please see pages 4 "A" -"B"
3. County and judicial circuit: U.S. District Court, Jacksonville Division
4.      Appropriate filing date: Please see pages 4 "A" -"B"
5. If not still pending, date of dismissal: Please see pages 4 "A" -"B"
6.      Reason for dismissal: Please see pages 4 "A" -"B"
7.      Facts and claims of case: Unconstitutional conviction 28 USC§2254
        (Attach additional pages as necessary to list state court cases.)

D.      Have you ever had any actions in federal court dismissed as frivolous,
malicious, failing to state a claim, or prior to service? If so, identify each
and every case so dismissed: Please see pages 4 "A"
        Yes (XX)            No( )
        1. Parties to previous action: See (B) *supra* Please see pages 4 "A" -"B"
        (a) Plaintiff(s): See above  Please see pages 4 "A" -"B"
        (b) Defendant(s) See above Please see pages 4 "A" -"B"
        2. Name of judge: See above     Case #: Please see pages 4 "A" -"B"
        3. County and judicial circuit See above Please see pages 4 "A" -"B"
        4. Appropriate filing date: See above Please see pages 4 "A" -"B"
        5. If not still pending, date of dismissal: See above Please see pages 4 "A" -"B"
        6. Reason for dismissal: See above Please see pages 4 "A" -"B"
        7. Facts and claims of case: See above  Please see pages 4 "A" -"B"
                (Additional pages as necessary to list the specific instances.)
Please see attached page 4 "A"-"B"

## IMMINENT DANGER EXCEPTION & PRAYER
## FOR EXPEDITED RESOLUTION

Plaintiff young respectfully contends that if his procedural history is inaccurate or found

to constitute "three Strikes" per the PLRA, that the Court consider that Young is dying rapidly as

a direct result of the policy and practice of the Defendants named herein. That such conduct in

relation to Young's condition warrants exception to the standard norm and as such Young should

be permitted to proceed. CF. Mitchell v. Nobles, 873 F.3d 869 (11th Circuit 2017) Additionally,

Plaintiff prays that this litigation be fast tracked as his death is imminent and not resolving the

case before such would constitute an injustice by permitting those responsible to further profit by

their unconstitutional conduct. Plaintiff swears that he has tried to recall all prior filings, in good

faith. Medical condition has so diminished Plaintiff's memory process, that he is not able.

## OVERVIEW

Plaintiff's now fatal liver disease results from Hepititus "C" condition for which Defendants would not treat. Both private health care Defendants utilized a simple policy and practice to deny care first by institutional physician. Then, denial of care was ratified by Secretary Jones, via IISC positions {Impaired Inmate Services Coordinator}. Such matters as, lying about availability of care and willful concealment of FBOP evaluation and treatment guidelines, underline reprehensible conduct by Defendants. Defendants acted on behalf and in the stead of corporate positions regarding employment with contract health provider. Each of these Defendants by vestige of their positions, were charged with obligation to prevent the actions and inactions of these claims. Facts well plead and grievance records produced from FDC, will clearly flesh out the practice of policy enactment, as Plaintiff was "rubber stamped" and "boiler plated" just short of death. This denial of care, in favor of profit; results in Plaintiff's torment and sorrow. Even ameliorative care products are refused Plaintiff. Health care grievances, {HCGs}, will clearly evince that Plaintiff is not the only critically inflicted elderly offender, denied critical care. Cost slashing by Defendants Corizon and Centurion for ameliorative care products is a "regulatory measure" and thusly requires those deprived to access sick call three times to see physician, whom then informs: "no longer available," "won't allow us." HCGs regarding this matter are suppressed by Secretary Jones, via IISC positions. Finally, no dietary considerations exist nor supplements provided for, the skeletal Plaintiff. No slow eating pass for the near toothless Plaintiff is issued. Plaintiff receives no pain medications.

This Complaint is prepared for Plaintiff, read and discussed by Plaintiff, as results from limited in-capacitance of Plaintiff. In support of his Motion For Appointment Of Counsel, Quest For Expedited Resolution, and Imminent Danger Exception, Plaintiff Young incorporates Sworn Declaration of Daniel R. Lonergan #084131, EXH. #1, {accompanying Motion For Appointment of Counsel}

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. (if there

are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)

**(1)** Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections. Plaintiff is currently 70 years of age and has been incarcerated since 1981. Plaintiff suffers from Hepatitis "C" and the disease has escalated to such a level that Plaintiff now has severe liver cancer. (ESLD, End Stage Liver Disease) Plaintiff is currently under the care of Defendant, <u>Centurion</u> Health Services, via Defendant <u>Jones</u>.

**(2)** Under the June 2014, FBOP Guidelines, adopted by the CDC, patients were supposed to be prioritized for triple drug therapy based upon the advancement of hepatic fibrosis, or cirrhosis, whether the patient is a liver transplant recipient or has a HIV co-infection, or whether the patient has a comorbid medical condition associated with HCV, such as certain types of lymphomas. The degree of fibrosis may be determined in several ways. The AST-to-platelet ratio index ("APRI") is the FBOP-preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis. Liver biopsies and abdominal ultrasounds in this time period were also used to identify findings consistent with cirrhosis. Although the APRI score is useful in most cases, it is not an exact predictor of cirrhosis. Sometimes patients with high APRI scores show no signs of fibrosis or cirrhosis on ultrasounds or biopsies. In June 2014, the FBOP recommended prioritizing patients who had APRI scores of 1.0 or greater, or whose APRI score was between 0.7 and 1.0 along with other findings suggestive of advanced fibrosis. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Defendant <u>Corizon</u> LLC., and Defendants identified *infra,* per this mandate. FDC intentionally did not enforce treatment with Defendant <u>Corizon</u> and established custom of denying all health care grievances {HCGs} by created positions of impaired inmate services coordinator {IISC}et. al. During this period, one Ebony O. Harvey, repeatedly appears in FDC, HCG records as <u>IISC</u> establishing "bolier plate" pattern of denials.

**(3)** In July 2015, the FBOP revised its HCV Guidelines to reflect the availability of *new* treatments and established the *new* standard of care. The FBOP provided that certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The patients at Level 1, or highest priority, are those with known decompensated cirrhosis, liver transplant candidates or recipients, patients with hepatocellular carcinoma, those

with comorbid medical conditions associated with HCV, those taking immunosuppressant medications, and newly incarcerated inmates already receiving treatment. Patients at Level 2, or high priority, include those with APRI scores greater or equal to 2.0, those with advanced fibrosis on a liver biopsy, those with Hepatitis B coinfection, those with HIV coinfection, and those with comorbid liver disease. Patients at Level 3, or intermediate priority, include those with APRI scores between 1.5 and 2.0, those with Stage 2 fibrosis on a liver biopsy, those with diabetes mellitus, and those with porphyria cutanea tarda. Patients at Level 4, or routine priority, are those with Stage 0 to stage 1 fibrosis on liver biopsy, and all other cases of HCV infection that meet the criteria for treatment. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Defendant Corizon LLC., and Defendants identified *infra*. Each Defendant acted per custom, policy, as plead *infra*.

(4) In April 2016, the FBOP revised its HCV Guidelines to reflect the availability of three *new* treatment drugs. The 2016 Guidelines did not change the way APRI scores are used to prioritize patients for treatment. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Defendant Corizon LLC., and Defendants identified *infra*. Each Defendant acted per custom, policy as plead *infra*.

(5) In August 24, 2016, Defendant Centurion replaced Defendant Corizon as FDC health care provider. Defendant Centurion was aware of the number of HCV affected prisoners and the policy and custom left in place by Corizon not to evaluate and or treat per the guidelines of ¶ #2-4, *supra*. Centurion was aware of the FDC grievance process insulating then Corizon then Centurion, via FDC Impaired Inmate Services Coordinators {IISC} and other agents yet identified. Centurion immediately agreed to the "Corizon method" that all HCGs grieving lack of care, would be summarily, boiler plate denied. Both Corizon and Centurion had complicit approval by Defendant Jones (FDC) to conceal existence of, and not evaluate or treat per ¶ #2-4. Moreover, medical code listings for those infected with Hep C and critically ill offenders were manipulated, by concealing the number of those infected, as well as their/Plaintiff's conditions. This policy and practice was based upon the cost of the evaluation and treatment regimes and FDC agreed to the same. This was a factor in the contract price for prison health care which would have been sizably more,{less profit} had adherence to ¶ #2-4 been required. Indeed, Corizon quit. The Court may take judicial notice of *Copeland v. Jones* et al., 4:15-cv-00452-RH-CAS, "hernia settlement." Plaintiff incorporates well plead fact of Corizon—FDC—IISC, et. al.,

utilizing boiler plate HCG denials to deny care. They did so as FDC grievance records reveal regardless of right to treatment, for profit. This identical sham process and blind eye custom appears in Plaintiff's HCG's for care. The custom was so well established that it became a contract nod agreement. FDC has and continues to do Its part by *inter alia*, IISC and HSC positions and concealment of Health Care Bulletin {HCB} detailing care.

(6) From June 2014-August 24, 2016, Plaintiff sought care for the condition of hepatitis "C" from <u>Corizon</u>, and was refused. The refusal resulted from policy, practice and custom of Defendants <u>Corizon</u>, by and through Defendants <u>Woodrow A. Myers, Jr.</u>, <u>Rhonda Almanza</u>, <u>Helen Sneed</u>, <u>Teresa Woodal</u>, <u>Dr. Campbell</u> and <u>Dr. E. Perez-Lugo</u>. Plaintiff's condition was evaluated by blood tests and viewed via a 1988 ultra sound of Plaintiff's liver and pancreas. Plaintiff's medical file is replete with evidence of escalation of Hep "C" and eventual liver damage. Policy, practice of ignoring and concealing right to treatment existed from the outset. Defendants <u>Corizon</u>, <u>Woodrow A. Myers, Jr.</u>, <u>Rhonda Almanza</u>, <u>Helen Sneed</u>, <u>Teresa Woodal</u>, <u>Dr. Campbell</u> and <u>Dr. E. Perez-Lugo</u>, employed agreed upon policy defying *inter alia*, ¶ 2-4 *supra*. These Defendants knew the policy defied duty owed Plaintiff and all other FDC infected prisoners. These Defendants knew Plaintiff and all other infected prisoners would not be treated. Nonetheless, at the time of the June 2014, FBOP-CDC guideline treatment change, these Defendants acting under color of state law, had in effect an agreement that infected inmates/Plaintiff would not be informed of the existence of DAAs, and infected prisoners/Plaintiff would not be treated. This agreement was in furtherance of <u>Corizon</u> policy of cost cutting. FDC, HCG records demonstrate that Plaintiff and thousands of other infected prisoners, were not by policy employed by these Defendants for <u>Corizon</u> afforded evaluation and treatment per ¶ 2-4, *supra*. Plaintiff's and thousands of HCGs seeking evaluation and treatment, were routinely denied by <u>FDC</u> agent, E. O. Harvey, then <u>IISC</u>. The boiler plate denials were part and parcel of <u>Corizon</u>--FDC overall policy scheme to avoid expense of treatment. Although by June 2014, Petitioner's liver had been damaged by previous refusal to treat, application of ¶ 2-4, *supra*, would have been successful. The unconstitutional conduct continued until <u>Corizon</u> was relieved as FDC health care provider in August 24, 2016. The above named Defendants are directly responsible for this conduct up and until <u>Centurion</u> replaced Defendant <u>Corizon</u> as health care provider. Each Defendant knew the gravity of the policy and custom of non-treatment, yet

chose by policy of their making, not to inform Plaintiff/infected inmates, of availability of care and not to provide Plaintiff treatment.

(7) Post August 24, 2016, when Defendant Centurion took over, Plaintiff *was not* informed of the availability of DAA drugs (the cure), the FBOP 2016 change in CDC guidelines, regarding standards of care of ¶ #2-4, *supra*, nor that the DAA cure existed. At that time, Plaintiff's medical file evinces, Plaintiff's overall medical condition was not untreatable. Indeed, at Plaintiff's sham "chronic clinic" appointments, no mention was made by Centurion agents, including Defendant Dr. E. Perez-Lugo, of existence of the cure or Plaintiff's candidacy.

(8) Throughout the past four years, Plaintiff has received care that amounts to deliberate indifference, defying the requirements of ¶ #2-4, *supra*, including but not limited to: no pain medications, no vitamins, no dietary supplements and very little if any medications to care for the sundry assortment of health complications resulting from the liver disease. Because of Defendants policy of no care, Plaintiff has suffered and continues to suffer great pain and is rapidly reaching the end of his life. Plaintiff, as FDC grievance records reveal, has been denied even OTC vitamins such as B12, B6 and C. No dietary considerations are afforded Young such as Ensure drinks or supplements. Plaintiff's once ability to consume scheduled meals in the chow hall is diminished as a result of severe abdominal pain and swelling. He is skeletal. He regurgitates routinely.

(9) Plaintiff requested care by the cure, when he heard of the Hoffer v. Jones injunction, from Defendant Centurion and was refused per policy and custom by Defendant Perez-Lugo, John Doe #1-3, Michelle Schouest, IISC, Thomas Reimers, FDC Director of Health Services, and Julie L. Jones. Plaintiff was not provided the Cure by Defendant Centurion post April 2016, FBOP -CDC guideline change, due to policy agreed to by the above Defendants not to inform of the existence of DAA's and not to provide DAA's due to cost. Plaintiff grieved the denial utilizing the two stage grievance procedure and above named Defendants denied relief, stating that Plaintiff may access sick call if he wished to have his soon to be fatal condition monitored. Defendants Centurion, Jones, Thomas Reimers, Michelle Schouest, IISC, E.O Harvey, former IISC, as well as the "sound clinicians" currently Defendants John Doe #1-3, knew that the FBOP--CDC guideline change of 2014-2016, mandated that Plaintiff receive evaluation and DAA's {the Cure}, and other designated care. Plaintiff's HCG records, as well as thousands of then eligible for evaluation and treatment, per ¶ 2-4, *supra,* were denied pursuant to policy and

practice of profit, a non-medical reason, via "boiler plate' one liners. FDC and Centurion by and through Defendants E. Perez-Lugo, John Doe #1-3, Michelle Schouest, IISC, Thomas Reimers, FDC Director of Health Services, and Julie L. Jones, adopted policy of boiler plate denials for HCGs regarding evaluation and care for HCV. This "we'll work together" custom of no evaluation, and cure for infected prisoners/Plaintiff, is revealed by number and content of denied HCGs, possessed by Defendant Jones.

(10) With the exception of 100 milligrams of Neurontin, three times a day, Plaintiff receives no pain medication of significance. Defendants knew that "it is undisputed that Neurontin has not been approved by the FDA for the treatment of neuropathic pain. Indeed, published medical studies showed that it was no more effective than a placebo for neuropathic pain." Ross v. Corizon LLC, 2016 U.S. Dist. LEXIS 79184 (U. S. D. C. M. D. FLA. 2016) citing Monteleone v. Corizon, No. 5:14cv65-WS, 2015 U.S. Dist. LEXIS 40356, 2015 WL 1458283, at *14 (N.D. Fla. Mar. 27, 2015) The only other "pain relief' medication prescribed Plaintiff as his liver swells and kidneys begin to fail is ibuprofen, which is ineffective and causes repeated stomach upset.

(11) Plaintiff requested of Defendants Centurion and Jones to be able to review the Health Services Bulletin {HSB} which governs the mandated care per Hoffer v. Jones and was refused. This custom of FDC, Corizon and Centurion of not permitting prisoners to read HSB's governing care, is intentional and unconstitutional. Plaintiff grieved the matter utilizing the two stage grievance procedure and was denied relief. In doing so, Defendants FDC and Centurion, by and through Defendant E. Perez-Lugo then CHO at UCI, and Michelle Schouest, IISC, intentionally deprived Plaintiff of his right to know, per FS. 381.026, 0261 and did such with ill will, spite and animus, in furtherance of the orchestrated plan not to treat Plaintiff. Defendants actions, inactions, policy and custom, will result in Plaintiff's death and has caused needless pain and suffering.

(12) In denying Plaintiff #5 *supra*, Defendant Centurion stated in part that "sound clinicians" determined that no treatment would be provided. Plaintiff grieved *inter alia,* wanting to know per the Patient's Bill of Rights, FS. 381.026, 0261, to whom these "sound clinicians" are. Defendant Centurion by Dr. E. Perez Lugo, refused to name these persons and Michelle Schouest, IISC, upheld the denial per the policy and custom not to treat. Thusly, theses persons

are now John Does #1-3, in this litigation. Michelle Schouest, IISC, {Impaired Inmate Services Coordinator}, is, like John Does #1-3, sued in her individual capacities.

(13) At all times hereto, each Defendant named herein by employing policy of deprivation of care for serious medical need, has acted under the color of state law. The policy equates to ill will, hatred, spite and hard heartedness. Plaintiff was not informed of life saving DAA's, nor advised that he could be recommended for a liver transplant. Moreover, Defendants refusal to provide pain relief to Plaintiff, as well as ameliorative medications from Plaintiff's E S L D and spinal disorder, result from policy, practice and custom of "so what sue me" causing Plaintiff great physical and mental pain and anguish. This conduct is direct result of policy of Defendant in furtherance of profit. HCG records possessed by Secretary Jones evince clear pattern of deprivation of implementation of ¶ #2-4, *supra*, and evince ill will, spite and animus by enforcement of the no evaluation and treatment policy.

(14) FDC records reveal that Plaintiff Young has begged for care and ameliorative treatment, including pain medications, only to receive "boiler plate" denials. FDC, via Defendant Jones knew that contracts for Corizon and then Centurion would permit both HCPs to "buck" the costs for treatment of those infected/Plaintiff, and the FDC would be forced to defend. Centurion "took its chances" upon accepting FDC contract when Corizon quit, relying on ongoing scheme of successfully not treating. Indeed, Defendants Corizon and Centurion prevailed in this scheme until Hoffer v. Jones,. This is so even though 8th Amendment right to life saving medical care was clearly established, death imminent.

(15) Plaintiff Young pleads that his physical condition in total constitutes a serious medical need as defined by the Eleventh Circuit Court of Appeals and his treatment grossly violates societal standards. Young incorporates by reference the imminent danger section of this Complaint. ESDL is fatal. Intentional neglect by Defendants of Plaintiff Young demonstrates cruel and unusual punishment that will soon result in Plaintiff's death. Plaintiff's pain and suffering is on going.

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

**CORIZON LLC,**
**WOODROW A. MYERS, JR.** Chief Operating Officer, ,
**RHONDA ALMANZA** Vice-President of Operations, Region II
**HELEN SNEED**, Director Of Operations, Region II
**TERESA WOODAL** Infectious Disease Control, Region II,
**ERRON CAMPBELL**, Medical Director,
**E. PEREZ-LUGO,** Former, Chief Health Officer UCI

## (16) CORIZON HEALTH SERVICES, Inc,

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra* and states, This Defendant in Its official capacity pledged competent health care for Florida prisoners upon contract with Defendant Jones, FDC, State of Florida. This Defendant understood that statutory obligation of care existed via special obligation of Defendant Jones, per FS. 20.315 (3). In so contracting, Defendant pledged to provide care within accepted medical norms and not to deprive needy prisoners of critical care because of cost. This for profit Defendant, chose to disregard obligation to provide critical care for serious medical needs of Plaintiff, via policy, practice and custom, employed by the above named Defendants. The motivating force was not to spend money, thusly increasing profits. This Defendant rewarded each Defendant (¶ 16-21) with salary raises, bonuses and other incentives upon profit increases, resulting from denial of care. Defendant Corizon's denial of care for serious medical need of infected Plaintiff prisoner, became policy and custom of operation, unimpeded and ratified in furtherance Defendant Secretary Jones, IISC positions. Defendant Corizon by and through theses named Defendants, defied the 2014, {et. al} FBOP--CDC guideline treatment change and did not inform Plaintiff Young of the existence and availability of DAA's. When Young sought treatment for the HCV, he was denied by Defendant E. Perez Lugo, agent of Defendant Corizon, and Defendants Teresa Woodal, Helen Sneed, Rhonda Almanza, and Woodrow A. Myers, Jr., via policy, practice and custom of not providing care for Hep C condition, for profit. Corizon's decision not to inform Young of the FBOP--CDC, 2014-2016, guideline treatment change and not to provide the cure of DAAs, was deliberate, a policy, practice and custom to save money. As a direct result of this conduct, Plaintiff Young was denied the opportunity to elect the cure by DAAs and to receive the same. The result of this conduct has caused Plaintiff Young's liver to deteriorate by the advancement of the HCV, which could have been prevented after the 2014, FBOP--CDC guideline treatment changes of ¶ 2-4, *supra*. Corizon consistently refused to provide Plaintiff

pain medications to help relieve the pain resulting from their cruel conduct. Corizon's conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment. The Policy, practice and custom is evinced by boiler plate denials of HCGs resulting from FDC ratification in furtherance of overall objective to save money. Thousands of HCGs in possession of FDC demonstrate enactment of the policy and practice, increasing profits for Defendant Corizon. These Defendants acted under the color of state law regardless of human rights and indifferent to societal standards preventing cruel conduct. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff, as part and parcel of the orchestrated effort to profit. This Defendant did so in an individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

### (17) WOODROW A. MYERS, JR., Chief Operating Officer

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra,* and states: This Defendant in official position capacity, as regards expenditures on evaluation and treatment of HCV infected prisoners/Plaintiff, was required per direct oversight management responsibility, to insure implementation by Defendant Rhonda Almanza, Vice-President of Operations, Region II, to require Defendant Helen Sneed to ensure approve and ensure sufficient funds for evaluation and treatment required by ¶ 2-4, *supra,* FBOP evaluation and treatment guidelines. This Defendant while so employed, acting in individual capacity, required Helen Sneed to ignore substantive care requirement, in favor of costs; thereby acting in policy and practice of Defendant Corizon. This denial of standard of care was agreed to and ratified by the actions and inactions of Defendant Jones, IISC positions and others yet named. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff, to profit. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(18)** <u>RHONDA ALMANZA,</u> **Vice-President of Operations, Region II**

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra,* and states: This Defendant in official position capacity and agent for <u>Corizon</u>, acted in conjunction with directive of Defendant <u>Woodrow A. Myers, Jr.</u>, as regards infected prisoners/Plaintiff, did direct <u>Helen Sneed</u> not to implement of FBOP--2014 {et. al} evaluation and treatment guidelines. This Defendant while so employed required <u>Helen Sneed</u> to ignore substantive care requirement, in favor of costs; as per policy and practice of Defendants <u>Woodrow A. Myers, Jr.</u>, Chief Operating Officer, thereby acting in policy and practice of Defendant <u>Corizon</u>. This denial of standard of care was agreed to and ratified by the actions and inactions of <u>Defendant Jones</u>, <u>IISC</u> positions and others yet named. Acting in concert with Defendants named herein and yet to be identified; this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff, to profit. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(19)** <u>HELEN SNEED</u> **Director Of Operations, Region II**

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra,* and states: This Defendant in official position capacity, as regards prisoners such as Plaintiff that are infected with Hep "C" virus, was required to insure that funds were allocated for implementation of 2014 {et. al}, FBOP guideliens. This Defendant had obligation of supervision of <u>Teresa Woodal</u> Infectious Disease Control position, to account for number of infected prisoners as sell as accounting for funds expended in adherence with FBOP {et. al}, evaluation and treatment guidelines. This Defendant while so employed ignored substantive care requirement, in favor of profit; as per policy and practice of Defendants <u>Rhonda Almanza</u>, Vice-President of Operations, Region II, per direction of <u>Woodrow A. Myers, Jr.</u>, Chief Operating Officer, in furtherance of policy, practice and custom of profit for Defendant <u>Corizon</u> and others yet named. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct, resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This denial of standard of care was agreed to and ratified by the actions and inactions of <u>Defendant Jones</u>, through <u>IISC</u> positions and others yet named This

conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(20) TERESA WOODAL, Infectious Disease Control**

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra,* and states: This Defendant was responsible in official position capacity, as regards those prisoners such as Plaintiff, that are infected with Hep "C" virus. This Defendant has direct obligation per Infectious Disease Control position, to adhere to FBOP evaluation and treatment guidelines. This Defendant while so employed, acting in individual capacity, ignored substantive care requirement, in favor of costs; as per policy and practice of Defendants Woodrow A. Myers, Jr., Chief Operating Officer, Rhonda Almanza, Vice-President of Operations, Region II, Helen Sneed, Director Of Operations, Region II. This denial of standard of care was agreed to and ratified by the actions and inactions of Defendant Jones, IISC positions. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(21) ERRON CAMPBELL Medical Director**

Plaintiff incorporates by reference paragraphs # 1-6, 8, 11, 13-15 *supra,* and states: This Defendant was charged by position of over-all health services to *inter alia,* prisoners' infected with the virus, in his individual capacity. Defendant Erron. Campbell, did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Corizon, as directed and implemented by Defendants Woodrow A. Myers, Jr. Chief Operating Officer, Rhonda Almanza Vice-President of Operations, Region II, Helen Sneed,, Director Of Operations, Region II, and did so knowing that Teresa Woodal Infectious Disease Control, Region II, would be in agreement not to implement ¶ 2-4, *supra,* The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Corizon rewarded each Defendant with pay incentives and other profit sharing bonuses resulting

from the policy and practice. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**CENTURION OF FLORIDA, LLC**
**THOMAS REIMERS,** Director Health Services
**DANIEL CHERRY,** Centurion's Former Medical Director FDC
Individual Capacity
**JOHN DOE #1-3,** Individual Capacity
**MICHELLE SCHOUEST, IISC,** Impaired Inmate Services Coordinator,
**E. PEREZ-LUGO,** Former, Chief Health Officer UCI

### (22) CENTURION OF FLORIDA, LLC

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: This Defendant in its official capacity pledged competent health care for Florida prisoners upon contract with Defendant Jones, FDC, State of Florida. This Defendant understood the special need for care resulting from Defendant Corizon's deprivation of care for profit gouging. Defendant Centurion understood the statutory obligation of care of Defendant Jones, per FS. 20.315 (3). In so contracting, Defendant pledged to provide care within accepted medical norms. This for profit Defendant chose to disregard obligation to provide critical care for serious medical needs of Plaintiff, via policy, practice and custom employed by Defendants *infra.*. The motivating force was not to spend money, thusly increasing profits. This Defendant rewarded each Defendant (¶ 24-) with salary raises, bonuses and other incentives upon profit increases resulting from denial of care. Defendant Centurion's denial of care for serious medical need of infected Plaintiff prisoners, became policy and custom of operation, unimpeded and ratified in furtherance by and through Defendant Secretary Jones, IISC positions. Plaintiff incorporates by reference ¶ #1-11, and #16-21 *supra,* and states: Defendant Centurion by and through theses named Defendants, defied the 2014, {et. al} FBOP--CDC guideline treatment change and did not inform Plaintiff Young of the existence and availability of DAA's. When Young sought treatment for the HCV,

he was denied by Defendant E. Perez-Lugo, agent of Defendant Centurion, and Defendants John Doe #1-3, via policy, practice and custom of refusing care for Hep C condition due to cost. Decision not to inform Young of the FBOP--CDC, 2014-2016, guideline treatment change and not to provide the cure of DAAs, was deliberate, a policy, practice and custom to save money. As a direct result of this conduct, Plaintiff Young was denied the opportunity to elect the cure by DAAs and to receive the same. The result of this conduct has caused Plaintiff Young's liver to deteriorate by the advancement of the HCV, which could have been cured after the 2014, FBOP--CDC guideline treatment change. Centurion consistently refused to provide Plaintiff due care as mandated by the FBOP-CDC change. Plaintiff is not provided pain medications of substance to relieve the pain resulting from their cruel conduct. Centurion's conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment. The Policy, practice and custom is evinced by boiler plate denials of HCGs resulting from FDC ratification in furtherance of overall objective to save money. Thousands of HCGs in possession of FDC demonstrate enactment of the policy and practice, increasing profits for Defendant Centurion. These Defendants acted under the color of state law regardless of human rights and indifferent to societal standards preventing cruel conduct. Acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

**(23) THOMAS REIMERS,** Director Health Services

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: This Defendant was charged by position to direct over-all health services to *inter alia*, prisoners' infected with the virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Centurion, as directed and implemented by Defendants John Does #1-3. Each Defendant was in agreement not to implement ¶ 2-4, *supra,* FBOP 214 {et al}, evaluation and treatment guidelines. This Defendant, acting in individual capacity, required suppression of numbers of infected prisoners and required John Doe #1-3,

Michelle Schouest, IISC, Impaired Inmate Services Coordinator, E. Perez-Lugo, Former, Chief Health Officer UCI, to comply with the policy and practice of suppression of existence of FBOP evaluation and treatment and to deny care. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. This Defendant knew of the 2014-2016 FBOP-CDC guideline changes mandating care for Plaintiff and denied care. This Defendant utilized his position as Director Health Services to employ policy and custom of Corizon and Centurion to disregard content of ¶ 2-4, *supra,* resulting in no evaluation and care. This custom was approved by Defendant Jones and employed the boiler plate HCG denial pattern to deny care. As Director Health Services this Defendant had an obligation to ensure that the protocol of ¶ 2-4, *supra,* be followed. Instead, acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain and suffering. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

### (24) **DANIEL CHERRY**, Centurion's Former Medical Director, FDC

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: This Defendant was charged by position to direct over-all health services to *inter alia*, prisoners' infected with the virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners/Plaintiff, per policy and practice of Centurion, as directed and implemented by Defendants John Does #1-3. Each Defendant was in agreement not to implement ¶ 2-4, *supra,* FBOP 214 {et al}, evaluation and treatment guidelines. This Defendant, acting in individual capacity, required suppression of numbers of infected prisoners and required John Doe #1-3, Michelle Schouest, IISC, Impaired Inmate Services Coordinator, E. Perez-Lugo, Former, Chief Health Officer UCI, to comply with the policy and practice of suppression of existence of FBOP evaluation and treatment and to deny care. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy

and practice. This Defendant knew of the 2014-2016 FBOP-CDC guideline changes mandating care for Plaintiff and denied care. This Defendant utilized his position as Director Health Services to employ policy and custom of <u>Corizon</u> and <u>Centurion</u> to disregard content of ¶ 2-4, *supra,* resulting in no evaluation and care. This custom was approved by Defendant <u>Jones</u> and employed the boiler plate HCG denial pattern to deny care. As Director Health Services this Defendant had an obligation to ensure that the protocol of ¶ 2-4, *supra,* be followed. Instead, acting in concert with Defendants named herein and yet to be identified, this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain and suffering. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

### (25) <u>JOHN DOE 1-3</u>

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: These Defendants determined that Plaintiff would not be provided the DAA cure and in doing so ratified the decision not to treat Plaintiff made by their codefendant, <u>E. Perez-Lugo</u>, then CHO of UCI. These Defendants defied mandates of ¶ # 2-4, *supra,* and did so with ill will and spite and hid their identities per agreement with Defendant <u>E. Perez-Lugo</u> and in furtherance of <u>Centurion</u> policy and practice not to treat. The decision was made out of ill will and animus, in order to save Defendant <u>Centurion</u> money. Defendant <u>E. Perez-Lugo</u> refused to identify theses "sound clinicians" in order to insulate their identity, to save <u>Centurion</u> money. Defendant, <u>Michelle Schouest, IISC</u>, agent of Defendant <u>Jones</u>, approved of both the decision not to provide DAA cure to Plaintiff and not to identify these "sound clinicians." Defendants <u>Doe #1-3</u>, refused to provide Plaintiff the DAA cure to save <u>Centurion</u> money. This Defendant did so in his individual capacity with won ton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain and suffering. Plaintiff's failing liver is a direct result of this Defendant's actions acting in furtherance of the scheme to profit This conduct has resulted in deterioration of Plaintiff's liver resulting in ESLD. Plaintiff has suffered and

continues to suffer from the end result of Defendant's conduct. This conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

**(26) MICHELLE SCHOUEST, Impaired Inmate Services Coordinator, IISC**

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: This Defendant determined that Plaintiff would not be provided the DAA cure, vitamins and evaluation for liver transplant and in doing so, ratified the decision not to treat Plaintiff made by codefendants, E. Perez-Lugo, former CHO of UCI, and John Does #1-3, acting per Centurion policy to deny evaluation and treatment. This Defendant denied the HCGs based not upon medical reasons, but in furtherance of policy and custom of Corizon *and* Centurion as established via agreement with Secretary Jones, Erron Campbell and Thomas Reimers. This Plaintiff knew of the 2014-2016 FBOP-CDC guideline changes of ¶ 2-4, mandating care for Plaintiff and intentionally disregarded the same as per FDC-Corizon and Centurion agreement. In fulfilling this role, this Defendant acted with ill will, spite and animus in an individual capacity, under the color of state law and the conduct violates the 8th Amendment.

**(27) E. PEREZ–LUGO, Former UCI CHO**

Plaintiff incorporates by reference paragraphs # 1-15, *supra,* and states: This Defendant while employed by both Corizon and Centurion at UCI, intentionally did not advise Plaintiff of the 2014-2016 BFP- CDC treatment guideline change, nor the existence of DAA's to cure his HCV. Defendant Perez Lugo denied Plaintiff: the DAA cure, meaningful pain relief, and personally denied institutional HCG in furtherance of Corizon and Centurion policy to save money, resulting in denial of evaluation for care, and cure by DAAs and to be recommended for liver transplant. Defendant Perez-Lugo never mentioned the possibility of recommendation for a liver transplant. This Defendant lied to Plaintiff's face when informing Plaintiff in 2015 that no medical help existed to prevent further spread of the virus and to save Plaintiff's life. Defendant Michelle Schouest, IISC, and agents yet to be shown, advanced and employed this policy, practice and custom for Defendant Jones by boiler plate denial of HCGs, extinguishing life saving treatment and humane ameliorative care. Defendant E. Perez-Lugo's actions while employed by Corizon, were ratified by Defendants Teresa Woodal, Helen Sneed, Rhonda Almanza, and Woodrow A. Myers, Jr., per their policy and custom in furtherance of profit. While employed by Centurion, E. Perez-Lugo's actions were ratified by Defendants Michelle Schouest, IISC, Thomas Reimers, Erron Campbell, and Julie L. Jones, per policy, custom in

furtherance of profit. This Defendant's conduct in both his official and individual capacities, while employed by both Corizon and Centurion, whom ratified his actions via policy not to inform Plaintiff and to not provide treatment and to deny all HCG's for care, has resulted in deterioration of Plaintiff's liver resulting in ESLD. Plaintiff has suffered and continues to suffer from the result of this Defendant's conduct. In fulfilling this role, this Defendant acted with ill will, spite and animus in an individual capacity, under the color of state law and the conduct violates the 8th Amendment guarantee to be free of cruel and unusual punishment.

**(28) JULIE L. JONES, Secretary, FDC, Official Capacity, Injunctive / Declaratory Relief**

Ms. Jones as Secretary of the FDC, is directly responsible for Plaintiff's health care and could not abrogate that responsibility as established by FS.20.315 (3), by contracting the same to Corizon and or Centurion. Ms. Jones knew or should have known that the CDC changed treatment guidelines for HCV in 2014-2106, requiring both Defendants Corizon and Centurion to comply with updated mandate to evaluate and treat. Ms. Jones knew that Defendant Michelle Schouest, IISC, and other designees to be shown, acted in furtherance of plan, scheme and policy of Defendants Corizon and Centurion to "boiler plate" denials of health care grievances (HCG) in defiance to FBOP evaluation and treatment guidelines, including DAA's due to cost. Ms. Jones knew Defendants Corizon and Centurion, E. Perez-Lugo and Michelle Schouest, IISC, refused to inform Plaintiff of the FBOP-CDC treatment guideline change. Defendant Jones, FDC, deliberately concealed the existence and availability of DAA's and content of ¶ #2-4, *supra*, and did so with ill will, spite and no concern for humane treatment. Defendant Jones did this in furtherance of profit for both Defendants Corizon and Centurion as Secretary Jones knew that if demand for mandated evaluation and care was asserted, Corizon and Centurion would back out and cancel their contracts or demand more money not then available. Ms Jones knew of the conflict in contracts between Corizon and Centurion regarding costs to implement the evaluation and treatment protocol of ¶ #2-4, *supra*. Ms. Jones was aware that both for profit companies had agreement with FDC, a policy and practice, to routinely deny health care grievances (HCG's) in furtherance of profit. This conduct violates Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite cases/statutes.

## COMPENSATORY DAMAGES

### Corizon and Centurion

Plaintiff seeks compensatory damages in the amount of One million dollars from each Defendants Corizon and Centurion.

Plaintiff seeks compensatory damages in the amount of $500,000 from Defendants: Woodrow A. Myers, Jr., Rhonda Almanza, Helen Sneed, Teresa Woodal, John Doe #1-3, E. Perez-Lugo, Michelle Schouest, Erron Campbell and Thomas Reimers.

## PUNITIVE DAMAGES

Plaintiff seeks punitive damages in the amount of $500,000 from each Defendant in their individual capacity; Defendants Woodrow A. Myers, Jr., Rhonda Almanza, Helen Sneed, Teresa Woodal, John Doe #1-3, E. Perez-Lugo , Michelle Schouest, Erron Campbell and Thomas Reimers, Daniel Cherry. In doing so, Plaintiff states in sum that punitive damages are appropriate where the actions and inactions of these Defendants are reprehensible, in that the Defendants knew that their policy and practice as plead herein would result in plaintiff's pain and suffering then excruciatingly painful death. That each defendants conduct was motivated by evil intent, or it involved reckless or callous indifference to the federally protected rights of Plaintiff—his serious medical need, the suffering caused by policy and practice of Defendants and now his eventual death. That each Defendant participated and ratified the policy of deprivation in furtherance of common scheme not to inform or treat—for profit. These actions and inactions were orchestrated and designed and ratified into policy and practice by theses defendants and are cruel and have caused unnecessary and wanton infliction of pain. This intentional for profit policy and custom not to inform and to deny treatment constitute deliberate indifference to serious medical needs of Plaintiff and constitutes the unnecessary and wanton infliction of pain.

## INJUNCTIVE AND DECLARATORY RELIEF

**Julie L. Jones**  Plaintiff seeks injunctive relief for treatment, ameliorative care including pain medications, {all to be determined} and hereby incorporates his motion for preliminary injunction submitted herewith.

As for <u>declaratory relief</u> of Secretary Jones, Plaintiff prays that order enter finding that FDC acted in concert with both <u>Corizon</u> and <u>Centurion</u> not to advise prisoners of the 2014-2016 FBOP-CDC guideline change and in doing so, ultimately denied Plaintiff mandated evaluation and care. That FDC has policy and custom of refusing prisoners to review HSB governing care and in this fashion, concealed from Plaintiff the 2014-2016 FBOP-CDC guideline change. That FDC according to HCG records, utilized created sham positions of *inter alia* <u>IISC</u>, to sign off in boiler plate fashion, denying serious medical need, without regard for humane treatment. That FDC acted in concert with both <u>Corizon</u> and <u>Centurion</u> to deny the HCGs in furtherance of profit and without regard to humane, mandated care. That the conduct of each Defendant herein individually and collectively has violated Plaintiff's 8th Amendment guarantees to be free from cruel and unusual punishment.

**Prevailing party fees and costs.**

I declare under penalty of perjury that I have read the above and have had it explained to me by Daniel R. Lonergan #084131 and that the foregoing statements of fact, including all continuation pages, are true and correct. Dated this 21ˢᵗ day of September 2018

STEVEN  D.  YOUNG #861067
Union Correctional Institution
P. O. Box 1000
Raiford, Fla. 32083

<u>**Mailing Certificate**</u>

I certify under penalty of perjury that this complaint was provided to UCI Correctional Staff for mailing in envelope addressed to Office of the Honorable Clerk, United States District Court at United States Courthouse 111 N. Adams St. Tallahassee, FL 32301-7730 on: the 21ˢᵗ day of September , 2018.

STEVEN D. YOUNG #861067

Union Correctional Institution
P.O. Box 1000
Raiford, FLA.
32083

Mailed from a State
Correctional Institution

CHECKED  SEP 24 2018

Office Of the Honorable Clerk
United States District Court, at,
United States Courthouse,
111 Nort Adams Street
Tallahassee, FLA. 32301-7730



RECIEVED
UNION CORRECTIONAL INSTITUTION
SEP 21 2018
BY MAIL PROCESSING