## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

Steven D. Young,

     *Plaintiff,*

v.                                                              Case No. 3:19-cv-749-J-32MCR

Secretary of the Florida Department of
Corrections Mark S. Inch, individually and
in his official capacity; and former
Secretary of the Florida Department of
Corrections Julie Jones, individually,

     *Defendants.*

_____/

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Steven D. Young alleges:

1.     This is a civil rights action brought by Steven D. Young—an inmate incarcerated at Union Correctional Institution ("UCI")—pursuant to 42 U.S.C. § 1983 seeking injunctive relief and compensatory damages, alleging that Defendants demonstrated deliberate indifference to Mr. Young's serious medical needs in violation of the Eighth Amendment of the United States Constitution by failing to provide adequate medical treatment.

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution of the United States.

3.     This Court has jurisdiction to hear this matter pursuant to 1343(a)(3), as this action seeks to redress the deprivation, under color of state law, of rights secured to Mr. Young by the Eighth Amendment to the Constitution of the United States.

4.      Mr. Young's claim for relief is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Mr. Young by the Constitution and laws of the United States.

5.      Mr. Young's claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

6.      Any administrative remedy available to Mr. Young has been exhausted, waived, or the continued pursuit thereof would be futile.

## **VENUE**

7.      Venue properly lies in this District, pursuant to the Order for Transfer, Dkt. No. 17, entered June 24, 2019.

## **PARTIES**

8.      Plaintiff Steven D. Young is and was at all relevant times a prisoner in the custody of the Florida Department of Corrections ("FDC"). Mr. Young is currently incarcerated at UCI in Raiford, Florida. His inmate number is 861067.

9.      Defendant Julie L. Jones is the former Secretary of the FDC. During her time as Secretary, she was responsible for the overall operation of the FDC, including the operation of Florida's prison system in compliance with the Constitution. She had a non-delegable duty to provide constitutionally adequate medical care to all persons in her custody. While she served as Secretary of the FDC, any action of the FDC, its agents, or employees, under the conditions described below, is imputed on Defendant Jones.

10.     Defendant Mark S. Inch serves as the current Secretary of the FDC. He was appointed in January 2019, replacing former Secretary Julie L. Jones. As Secretary of the FDC,

Defendant is responsible for the overall operation of the FDC, including the operation of Florida's prison system in compliance with the Constitution. Defendant has a non-delegable duty to provide constitutionally adequate medical care to all persons in his custody. As Secretary of the FDC any action of the FDC, its agents, or employees, under the conditions described below, is imputed on Defendant Inch.

11.     Defendant Inch has statutory authority to implement the equitable relief sought in this First Amended Complaint.

12.     The actions of Defendants and their employees and agents were performed under color of state law and constitute state action.

13.     Any staff member mentioned herein was/is an employee or agent of one or both Defendants and acted within the scope of his or her employment or agency at all relevant times.

## FACTUAL ALLEGATIONS

14.     Mr. Young is 72 years old and has been incarcerated continuously under the care and supervision of FDC since 1982.

15.     Hepatitis C virus ("HCV") is a blood borne disease that causes hepatitis C.

16.     Mr. Young's HCV infection was first detected through blood work and an ultrasound of his liver and pancreas performed in 1988.

17.     Liver inflammation caused by chronic HCV can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, fighting infection, and conducting other metabolic processes in the body. Liver inflammation can also cause fatigue, weakness, muscle wasting, skin rashes, and arthritis.

18.     People with chronic HCV develop fibrosis of the liver, a process by which healthy liver tissue is replaced with scarring. Scar tissue cannot perform the job of normal liver cells, so

fibrosis reduces liver function and results in the same symptoms mentioned in the previous paragraph, but with greater intensity. Fibrosis can also lead to hepatocellular carcinoma (liver cancer).

19.     When scar tissue takes over most of the liver, this extensive fibrosis is termed cirrhosis. Cirrhosis causes additional painful complications, including widespread itching, kidney disease, jaundice, fluid retention with edema, internal bleeding, varices (enlarged veins that develop in the esophagus or intestines, which can burst), easy bruising, ascites (fluid accumulation in the legs and abdomen), encephalopathy (mental confusion and disorientation), lymph disorders, increased risk of infection, seizures, and extreme fatigue. Most of these complications can occur before cirrhosis. If they go untreated, some can cause death, often from infection, bleeding, and fluid accumulation.

20.     Hepatitis C is a leading cause of liver-related mortality. Chronic HCV infection is an objectively serious medical need.

21.     Mr. Young suffers from a chronic HCV infection. His disease has escalated and caused him to develop sever liver damage, cirrhosis, and liver cancer resulting in End-stage Liver Disease.

22.     In late 2013 a new class of drugs known as direct-acting antivirals ("DAAs") were released to market.

23.     The benefits of immediate treatment include immediate decrease in liver inflammation, reduction in the rate of progression of liver fibrosis, reduction in the likelihood of the manifestation of cirrhosis and associated complications, a 90% reduction in the risk of liver-related mortality, and a dramatic improvement in quality of life.

24.     Treatment must be provided timely to ensure efficacy. Delay in treatment increases

the risk that treatment will be ineffective.

25.    By mid-2016 the FDC revised its policies to acknowledge that prescribing DAAs to treat chronic HCV infection was the standard of care.

26.    In spite of its own guidelines and despite the clear agreement in the medical community that all persons with chronic HCV should be treated with DAA drugs, Defendant Jones did not provide, and Defendant Inch has not provided these lifesaving medications to Mr. Young. This policy, custom, and practice contravenes the prevailing standard of care and clearly reflects deliberate indifference to Mr. Young's serious medical needs.

27.    In fact, the FDC has repeatedly failed to adhere to its own policy of treatment, as it would apply to Mr. Young. Over a year after the FDC's adoption of its policy acknowledging that treating chronic HCV infection required administration of DAAs, the FDC received a public reminder that the "present-day standard of care" is "to treat chronic-HCV patients with DAAs as long as there are no contraindications or exceptional circumstances." *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1296 (N.D. Fla. 2017) (citation omitted). The court issuing that reminder went so far as to explicitly condemn treating only patients with advanced liver damage. *Id.* ("It is inappropriate to only treat those with advanced levels of fibrosis.") (citation omitted).

28.    Despite this public admonishment, Defendant Jones and her agents employees, as well as Defendant Inch and his agents and employees have refused to provide life-saving treatment to Mr. Young. This conduct is particularly egregious given the availability of medications that will cure almost all hepatitis C patients with little to no side effects. Defendants' actions amount to deliberate indifference to Mr. Young's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

29.    Mr. Young's infection has reached an advanced stage due to Defendants' failure to

provide adequate medical treatment.

30.    Mr. Young has frequently made FDC employees and agents aware of his chronic condition in repeated efforts to seek treatment. Despite Mr. Young's chronic condition and the absence of any contraindications, Defendants have failed to provide Mr. Young with the present-day standard of care and altogether denied Mr. Young access to adequate treatment. Defendants have clearly demonstrated deliberate indifference to Mr. Young's serious medical need.

31.    Mr. Young's records clearly indicate that he has persistently requested treatment for pain caused by his chronic HCV infection. For example, Mr. Young specifically complained of pain caused by his chronic HCV infection in requests for administrative remedy or appeal filed on April 13, 2015 and May 13, 2015. Despite these and other frequent complaints, and despite the availability of DAAs and Defendants' documented awareness of the present day standard of care, Defendants have each failed to adequately address any of Mr. Young's requests for treatment of his chronic HCV infection.

32.    Institutional physicians—on the rare occasion when Mr. Young is or was allowed to see one—deny care, then Impaired Inmate Services Coordinators ratify those denials on behalf of Defendants.

33.    Defendants have implemented a custom and practice of denying care, or shuffling Mr. Young between various channels, responding that his requests must be resubmitted through a different process, e.g. sick call rather than an administrative request for relief. Employees and agents of Defendant Jones engaged, and employees and agents of Defendant Inch continue to engage in this practice to delay the implementation of treatment for Mr. Young's chronic HCV infection. When Mr. Young has sought treatment, Defendants' employees and agents have required that Mr. Young submit several requests for treatment prior to even providing him with

the opportunity to see an inmate physician. This practice engaged in by Defendants is designed to unjustifiably delay providing HCV treatment due to the cost of DAAs. Employees and agents of Defendant Jones engaged in this practice, and employees and agents of Defendant Inch continue to engage in this practice even though the standard of care requires treatment as early as possible.

34.    Defendants have adopted a pattern and practice of allowing months at a time to pass without permitting Mr. Young to see a doctor. For example, Mr. Young requested on November 16, 2016 that he receive treatment for his severe chronic pain caused by his chronic HCV infection. Four months passed. Mr. Young again informed Defendants' agents and/or employees on March 20, 2017 that Mr. Young had been attempting to see a doctor and still wanted to see a doctor to address the constant severe pain, which had increased in severity since approximately November 2016. Mr. Young indicated that he had an appointment canceled on February 14, 2017, then another canceled on March 2, 2017 and still hadn't been seen by a doctor to address his severe pain as of March 20, 2017. Employees and agents of Defendant Jones engaged in this practice, and employees and agents of Defendant Inch continue to engage in this practice even though the standard of care requires treatment as early as possible.

35.    A separate example of this pattern and practice occurred months later. On January 9, 2018 Mr. Young submitted an inmate sick-call request in which he asked to see a doctor about his chronic pain, indicating that it had again increased in severity. On January 17, 2018 Mr. Young submitted an inmate sick-call request in which he explained that he had submitted a sick-call request on January 9, 2018, but had not received a response. Herein he reiterated his need and request to be seen by a doctor. By January 24, 2018 Mr. Young still not had not received a response or seen a doctor. He submitted a request for administrative remedy or appeal. Therein he complained of Defendants' non-responsiveness and reiterated his medical need and request to see

a doctor. Defendant Jones' agent and/or employee denied that Mr. Young had submitted sick calls at all, and denied his request for administrative remedy or appeal. Employees and agents of Defendant Jones engaged in this practice, and employees and agents of Defendant Inch continue to engage in this practice even though the standard of care requires treatment as early as possible.

36.    FDC employees and agents have concealed FDC evaluation and treatment guidelines from Mr. Young, and Defendants have not complied with their own guidelines regarding the treatment of chronic HCV infection. When Mr. Young was allowed to see an inmate physician, Defendants' employees and agents never informed him of the existence of DAAs or that Defendants' own policy acknowledged the use of DAAs to treat HCV in its standard of care.

37.    When Mr. Young learned of Defendants' policy and/or medical bulletin governing the care and treatment of inmates suffering from chronic HCV infection, he requested to be provided with a copy, but Defendants never allowed him access to it.

38.    On June 12, 2018 Mr. Young submitted a request for administrative remedy or appeal, wherein he made clear that he understood he was suffering from irreversible liver damage. He requested to be provided with "the cure" for his chronic HCV infection, having become aware of it as a result of other litigation against Defendants.

39.    On June 13, 2018 Mr. Young submitted a request for administrative remedy or appeal, complaining that he had requested but never received a copy of Defendants' policy and/or medical bulletin governing the care and treatment of inmates suffering from chronic HCV infection.

40.    On June 29, 2018 Mr. Young resubmitted his request for administrative remedy or appeal, restating his request to be provided a copy of Defendants' policy and/or medical bulletin governing the care and treatment of inmates suffering from chronic HCV infection.

41.     In response to these and other requests, Defendants did not and have not provided Mr. Young with access to or a copy of Defendants' policy and/or medical bulletin governing the care and treatment of inmates suffering from chronic HCV infection. In fact, the FDC guidelines have acknowledged since at least mid-2016 that treating chronic HCV infections by administering DAAs is the standard of care.

42.     Rather than comply with Defendants' own institutional guidelines, however, Defendants' employees and agents issued boilerplate denials, simply stating that Mr. Young would not be allowed to review the requested material.

43.     Defendants, Defendants' employees, and Defendants' agents have never offered Mr. Young DAAs to treat his severe liver damage.

44.     In fact, Defendants have refused to provide Mr. Young with even over the counter vitamins or supplements, or other dietary considerations to address the abdominal pain and swelling Mr. Young suffers through as a result of his chronic HCV infection.

45.     Defendants, through a non-delegable duty, have an obligation to treat serious medical conditions. In spite of these obligations, Defendants have denied Mr. Young access to treatment for his chronic HCV infection.

46.     Moreover, Defendants are aware of the pervasiveness of these customs and practices complained of herein. FDC has been tainted with wide-spread, publicly known patterns of inmate abuse, specifically including the failure to adequately treat inmates with chronic HCV infections. *See, e.g*, *Hoffer*, 290 F. Supp. 3d 1292. Defendants are inarguably aware of FDC's history of care, adjudged constitutionally insufficient, yet they have not corrected the deprivations complained of herein.

47.     Defendants' non-compliance with FDC policy, as well as Defendants' custom and

practice of denying care, or shuffling Mr. Young between various channels—responding that his requests must be resubmitted through a different process, yet never providing treatment—has caused, and continues to cause, the unnecessary and wanton infliction of pain and an unreasonable risk of serious and permanent damage to Mr. Young's health. Mr. Young is rapidly reaching the end of this life.

48.     As a result of Defendants' refusal to provide treatment, Mr. Young's condition has progressed to the stage where it routinely causes him to suffer through significant pain, and his condition will ultimately cause his death. Accordingly, Mr. Young seeks declaratory and injunctive relief so that he may receive the treatment that he desperately needs. Additionally he seeks compensatory damages for his pain, suffering, and mental anguish, and costs and attorneys' fees incurred as a result of Defendants' failure to provide adequate medical treatment.

## COUNT I:
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

49.     Count One charges Defendants with deliberate indifference to Mr. Young's serious medical needs.

50.     This claim for relief is predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States, and upon 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

51.     Defendants, and FDC employees and agents, were acting under color of state law when they repeatedly refused and/or failed to provide Mr. Young with adequate medical treatment for his chronic HCV infection.

52.     Defendants are aware of the custom and practice of denying and/or providing constitutionally infatuate care to inmates suffering from chronic HCV infection. Yet Defendants

10

have not taken corrective action to address the harms Mr. Young suffers as a result of these customs and practices.

53.     FDC and its policymakers know about and enforce the policies and practices described herein. Defendants know of Mr. Young's serious medical needs, yet Defendant has intentionally failed and refused to provide treatment that will address those serious medical needs, knowing that those actions have resulted in and will continue to result in Mr. Young's continued suffering and exposure to liver failure and its symptoms, liver cancer, and death.

54.     Defendants have caused the wanton infliction of pain upon Mr. Young, and have exhibited deliberate indifference to Mr. Young's serious medical needs, in violation of the Eighth Amendment.

55.     Defendants know and has known of the substantial risk of serious harm, and actual harms, Mr. Young has suffered and continues to suffer. Yet Defendants have disregarded and continue to disregard those risks and harms by failing to adhere to the present day standard of care and failing to provide the very medication that would alleviate those risks and harms. Defendants have been deliberately indifferent to the serious harms FDC's actions and the actions of FDC employees and agents have caused to Mr. Young.

56.     By denying Mr. Young his medically necessary HCV treatment, Defendants have imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

57.     Defendants' denial of Mr. Young's medically necessary HCV treatment violates all standards of decency, contrary to the Eighth Amendment.

58.     Defendants' actions with respect to Mr. Young amount to grossly inadequate care. Defendants' actions with respect to Mr. Young are so cursory as to amount to no medical care at all.

59.     As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Mr. Young has suffered and continues to suffer from harm and violation of his Eighth Amendment rights. These harms will continue unless enjoined by this Court.

## **RELIEF REQUESTED**

WHEREFORE, Mr. Young requests the following relief:

A.     A judgment declaring that Defendants have exhibited deliberate indifference to the serious medical needs of Mr. Young and have violated Mr. Young's right to be free from Cruel and Unusual Punishment, as secured by the Eight Amendment of the U.S. Constitution;

B.     A preliminary and permanent injunction ordering Defendants to immediately provide DAA medications to Mr. Young, and continue to provide him with treatment consistent with the medically accepted standard of care for patients with chronic HCV infection;

C.     An order retaining jurisdiction over this matter to ensure that the terms of any injunction are fully implemented;

D.     An award of damages for Mr. Young's great physical pain, suffering, and discomfort;

E.     An award of damages for Mr. Young's mental pain and anguish;

F.     An award of Mr. Young's attorneys' fees, costs, and litigation expenses under 42 U.S.C. § 1988; and

G.     Such other relief as the Court may deem equitable and just under the circumstances.

## <u>JURY TRIAL DEMAND</u>

Mr. Young demands trial by jury.

Respectfully Submitted,

/s/ *Derek K. Mountford*

George E. Schulz, Jr. (FL # 169507)
Derek K. Mountford (FL # 127172)
Robert M. Gore (FL # 1018792)
**HOLLAND & KNIGHT LLP**
50 N. Laura St., Ste. 3900
Jacksonville, FL 32202
Telephone: (904) 353-2000
Email: buddy.schulz@hklaw.com
Email: derek.mountford@hklaw.com
Email: robert.gore@hklaw.com

*Attorneys for Plaintiff Steven D. Young*

13