UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN D. YOUNG,

    Plaintiff,

v.

Case No. 3:19-cv-749-MMH-MCR

MARK S. INCH, the Secretary,
Florida Department of Corrections;
and JULIE JONES, the former
Secretary, Florida Department of
Corrections,

    Defendants.

## ORDER

### I. Status

Plaintiff Steven D. Young, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action in the United States District Court for the Northern District of Florida by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. On June 24, 2019, the Honorable Robert L. Hinkle, United States District Judge, transferred the case to this Court. See Doc. 17. Young, is proceeding on a Second Amended Complaint (SAC; Doc. 30), filed with the assistance of court appointed counsel on March

13, 2020.[1] As Defendants, Young sues Mark S. Inch in his individual and official capacities as the current Secretary of the FDOC and Julie L. Jones in her individual capacity as the former Secretary of the FDOC (collectively, Defendants).[2] SAC at 1-3. Young alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they refused to provide lifesaving treatment for his Hepatitis C virus (HCV). Id. at 10-12. As relief, Young seeks declaratory relief and monetary damages for pain, suffering, discomfort, and mental anguish, as well as attorney's fees and costs. Id. at 12. He also requests that the Court enter a "preliminary and permanent injunction ordering Defendants to immediately provide [direct-acting antiviral (DAA)] medications to Mr. Young and continue to provide him with treatment consistent with the medically accepted standard of care for patients with chronic HCV infection." Id.

Before the Court are Defendants' motions to dismiss. See Defendant's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Inch Motion; Doc. 31); and Motion to Dismiss Second Amended Complaint by

---

[1] When Young initiated this action, he also filed a pro se "Motion for Appointment of Counsel" (Doc. 3) and a "Sworn Motion Seeking Preliminary Injunction/Expedited Hearing Sought" (Docs. 6, 7). The Court granted Young's request for appointment of counsel and deferred ruling on his pro se request for a preliminary injunction. See Order (Doc. 20).

[2] Former Governor Rick Scott appointed Defendant Jones as Secretary of the FDOC, effective January 5, 2015, and Governor Ron DeSantis appointed Mark S. Inch as Secretary in January 2019.

Julie Jones for Failure to State a Claim (Jones Motion; Doc. 49) (collectively, Motions).³ Young filed responses in opposition to the Motions. See Plaintiff Young's Response in Opposition to Defendant Inch's Motion to Dismiss (Response to Inch Motion; Doc. 34); and Plaintiff Young's Response in Opposition to Defendant Jones's Motion to Dismiss (Response to Jones Motion; Doc. 50) (collectively, Responses).⁴ The Motions are ripe for review.

## II. Young's Allegations in the SAC

In his one count SAC, Young alleges that Defendants, each in the supervisory role as Secretary of the FDOC, were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment. SAC at 10-12. He asserts that each Defendant was/is "responsible for the overall operation of the FD[O]C, including the operation of Florida prison system in compliance with the Constitution"; and that each Defendant had/has "a non-delegable duty to provide constitutionally adequate medical care to all persons in [her/his] custody." Id. at 2-3. Young asserts that "[w]hile [Defendant Jones] served as

---

³ The Motions are almost identical except the Jones Motion contains additional citations to Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010), and Hoffer v. Jones, 290 F. Supp. 1292 (N.D. Fla. 2017). See Jones Motion at 4, 9. Citations to the Motions refer to the arguments present in each Motion at the same page. When necessary to distinguish a particular Motion, the Court cites to the Inch Motion or the Jones Motion specifically.

⁴ The Responses are almost identical except in his Response to Jones Motion, Young clarifies that his request for injunctive relief is against Defendant Inch and states his request for that relief is better addressed in his Response to Inch Motion. See Response to Jones Motion at 4. Citations to the Responses refer to the arguments present in each Response at the same page. When necessary to distinguish a particular Responses, the Court cites to the Response to Inch Motion or the Response to Jones Motion specifically.

3

the Secretary of the FD[O]C, any action of the FD[O]C, its agents or employees . . . [was] imputed on Defendant Jones." <u>Id.</u> at 2. Likewise, he argues that "[a]s Secretary of the FD[O]C any action of the FD[O]C, its agents, or employees . . . is imputed on Defendant Inch." <u>Id.</u> at 3.

Young alleges that he is 72 years old and has been in the FDOC's custody since 1982. <u>Id.</u> at 3. In 1988, following a blood test and an ultrasound of his liver and pancreas, Young learned he had HCV. <u>Id.</u> He explains that he now "suffers from chronic HCV infection" and his "disease has escalated and caused him to develop severe liver damage, cirrhosis, and liver cancer resulting in [e]nd-stage [l]iver [d]isease." <u>Id.</u> at 4. Young alleges that chronic HCV is an "objectively serious medical need" and "is a leading cause of liver-related mortality." <u>Id.</u> Young asserts that in 2013, "a new class of drugs known as [DAAs] were [sic] released to market." <u>Id.</u> He argues that the benefits of DAAs "include immediate decrease in liver inflammation, reduction in the rate of progression of liver fibrosis, reduction in the likelihood of the manifestation of cirrhosis and associated complications, a 90% reduction in the risk of liver-related mortality, and a dramatic improvement in quality of life." <u>Id.</u> He contends that treatment using DAAs "must be provided timely to ensure efficacy" as "[d]elay in treatment increases the risk that treatment will be ineffective." <u>Id.</u> at 4-5.

According to Young, "[b]y mid-2016[,] the FD[O]C revised its policies to acknowledge that prescribing DAAs to treat chronic HCV infection was the standard of care." Id. at 5. Young argues that despite consensus among medical professionals that all persons with HCV should be treated with DAAs and the FDOC's revised policies recognizing that consensus, "[e]mployees and agents of Defendant Jones engaged in," and "employees and agents of Defendant Inch continue to engage in," a custom and practice of failing to adhere to the FDOC's own policy of HCV treatment by not providing DAAs to chronic-HCV prisoners such as Young. Id. Young asserts "this practice engaged in by Defendants is designed to unjustifiably delay providing HCV treatment due to the cost of DAAs." Id. at 7.

In his SAC, Young contends that "Defendants are aware of the pervasiveness of these customs and practices" because the FDOC "has been tainted with wide-spread, publicly known patterns of inmate abuse, specifically including the failure to adequately treat inmates with chronic HCV infections." Id. at 9. In support of this contention, Young relies on an opinion from the Northern District of Florida in Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017), in which the court publicly admonished the FDOC's failure to adhere to its own standard of care when it failed to treat chronic-HCV patients with DAAs. Id. at 5. Despite this public reprimand, Young alleges that

5

Defendants and their agents and employees still refused to provide him with this lifesaving treatment. Id.

Young further asserts that Defendants' employees and agents were/are specifically aware that Young suffers from chronic HCV and needs DAAs, but they "have failed to provide [him] with the present-day standard of care and altogether denied [him] access to adequate treatment." Id. at 6. Young alleges that he repeatedly notified FDOC employees, agents, and institutional physicians about his chronic condition; but, Defendants have "adopted a pattern and practice of allowing months at a time to pass without permitting [him] to see a doctor," requiring him to resubmit his requests for treatment through different means, and ignoring or rejecting those requests for procedural errors. Id. at 7. For example, Young states he requested to see a doctor and receive treatment for "his severe chronic pain caused by his chronic HCV infection" in November 2016, and "still hadn't been seen by a doctor to address his severe pain as of March 20, 2017." Id. He also asserts that he submitted a sick-call request about his chronic pain on January 9, 2018, and when he did not receive a response, he submitted another sick-call request on January 17, 2018. Id. When he did not receive a response by January 24, 2018, he submitted a request for an administrative remedy complaining about Defendants' non-responsiveness and again requesting to see a doctor. Id. at 7-8. According to Young, "Defendant Jones' agent and/or employee denied that

6

[he] had submitted sick calls at all, and denied his request for administrative remedy or appeal." Id. at 8. Based on his experience, Young contends "[e]mployees and agents of Defendant Jones engaged in this practice, and employees and agents of Defendant Inch continue to engage in this practice even though the standard of care requires treatment as early as possible." Id.

Young also asserts that Defendants, through their employees and agents, have intentionally concealed the FDOC's guidelines about DAA treatment for HCV. Id. at 8. Young alleges that when he finally saw a doctor, "Defendants' employees and agents never informed him of the existence of DAAs or that Defendants' own policy acknowledged the use of DAAs to treat HCV in its standard of care." Id. Young states that when he finally learned about Defendants' policy to treat HCV inmates using DAAs, he submitted administrative requests on June 12, 2018; June 13, 2018; and June 29, 2018, asking for a copy of Defendants' policy or medical bulletin governing the care and treatment of inmates suffering from HCV. Id. In response to these requests, Young alleges "Defendants' employees and agents issued boilerplate denials, simply stating that [] Young would not be allowed to review the requested material." Id. at 9. According to Young, Defendants' employees and agents have never provided Young with DAAs, nor have they provided him with "over the counter vitamins or supplements, or other dietary considerations to address [his] abdominal pain and swelling." Id. at 9.

7

Based on these facts, Young alleges that Defendants' conduct amounts to deliberate indifference to his serious medical needs. Id. at 10. He asserts that "Defendants [knew/know] of the substantial risk of serious harm, and actual harms, [] Young has suffered and continues to suffer"; however, "Defendants have disregarded and continue to disregard those risks and harms by failing to adhere to the present day standard of care and failing to provide the very medication that would alleviate those risks and harms." Id. at 11. He contends that as a result of Defendants' practice, policy, and custom, his infection has reached an advanced stage, causing him significant pain and suffering and will ultimately lead to his death. Id. at 5, 10.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

8

544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### IV. Eighth Amendment Standard

"To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct."

9

Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016)

(quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

11

Notably, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). As such, a complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

## V. Defendants' Motions to Dismiss

In seeking dismissal of Young's individual capacity claims against them, Defendants contend that Young fails to allege that they were deliberately indifferent to his serious medical needs.[5] Motions at 6-7. They do not dispute that HCV constitutes a serious medical need or that Young suffers from HCV. See generally id. Rather, they contend that Young "alleges no facts, whatsoever, establishing personal knowledge or action of the Secretary," nor that Defendants were personally responsible for providing HCV treatment or medication to Young. See Inch Motion at 7-8; Jones Motion 7-9. Defendants also argue that they cannot be held liable based on respondeat superior because Young fails to allege facts showing some causal connection between their conduct as Secretary and their employees or agents' failure to provide the requested DAA treatment. Motions at 4-5. They argue that while Young alleges that the FDOC had/has a custom or practice of not treating inmates with HCV, he provides no facts to support his conclusory allegation that Defendants "knew of or ratified this custom and practice of not treating [Young]," or that they knew their subordinates were acting unlawfully and made no attempt to stop them. Inch Motion at 8; Jones Motion at 9. As such, Defendants contend that "Count I overall should be dismissed without prejudice, and his demand

---

[5] Although Young also sues Defendant Inch in his official capacity (see SAC at 1), Defendant Inch does not seek to dismiss Young's official capacity claim. See generally Inch Motion.

13

for compensatory damages should be stricken and/or denied with prejudice." Inch Motion at 11; Jones Motion at 12.

In his Responses, Young argues that the SAC states a plausible claim for relief against Defendants under a theory of supervisory liability. Responses at 2-3. Young alleges he has established the requisite causal connection between Defendants' actions and his injuries in two ways. Id. at 3. Specifically, he contends that, in the SAC he "alleges facts sufficient to support the existence of – or from which the Court may reasonably infer the existence of": (1) "widespread abuse taking the form of refusing to provide inmates who suffer from chronic HCV with the present day standard of care"; and (2) "a custom or policy that resulted in the violation of [] Young's constitutional rights." Id. at 6-7.

## VI. Analysis

Supervisory officials cannot be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Instead, a supervisor can be liable only when that supervisor "personally participates in the alleged unconstitutional conduct or when there is a causal connection" between the supervisor's actions and the constitutional deprivation. Id. Because Young does not allege that either Defendant Jones or Defendant Inch personally participated in any

14

unconstitutional conduct, the viability of his supervisory claims depends on whether he plausibly alleges a causal connection between Defendants' actions and the alleged constitutional deprivation.

A plaintiff may establish the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so." Id. (internal citations and quotation marks omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Young argues that his allegations in the SAC are sufficient to show two of these approved methods for demonstrating the requisite causal connection. Responses at 5.

First, Young alleges that the FDOC's failure to treat HCV-positive inmates is sufficiently widespread to put Defendants on notice of the constitutional violation. SAC at 9. He suggests that his alleged constitutional injuries are not mere isolated occurrences and relies on the Northern District

15

of Florida's decision in Hoffer, 290 F. Supp. 3d at 1292, to show a publicly-known pattern of Defendants' failure to treat HCV-positive inmates. SAC at 9. In that litigation, the Northern District certified a class consisting of "all current and future prisoners in the custody of the Florida Department of Corrections who have been diagnosed, or will be diagnosed, with" HCV. Hoffer v. Jones, 323 F.R.D. 694, 700 (N.D. Fla. 2017). The plaintiffs sued Defendant Jones in her official capacity as Secretary, alleging the denial of DAAs under a cost-savings policy violated, inter alia, the Eighth Amendment. Id. at 696. Following an evidentiary hearing, the court granted the plaintiffs' request for a preliminary injunction and issued the opinion on which Young now relies. See Hoffer, 290 F. Supp. 3d at 1306. In that opinion, the court found the plaintiffs demonstrated a substantial likelihood of success on the merits of their Eighth Amendment deliberate indifference claim, considering, among other variables, the FDOC's "long and sordid history of failing to treat HCV."[6]

---

[6] Defendant Jones did not appeal the court's issuance of the preliminary injunction in Hoffer, 290 F. Supp. 3d at 1292. After resolving issues raised on summary judgment, the court entered a permanent injunction mandating that the FDOC provide DAA treatment for all HCV-positive inmates. See Hoffer v. Inch, 382 F. Supp. 3d 1288 (N.D. Fla. 2019). Defendant Jones did appeal the court's ruling on summary judgment, and on August 31, 2020, the Eleventh Circuit vacated the district court's permanent injunction; reversed the court's finding that Defendant Jones's treatment of F0-and F1-level HCV-positive inmates violated the Eighth Amendment, "with instruction to award summary judgment to the Secretary on that issue"; and remanded the rest of the district court's order, "so that it can make the findings required by the PLRA." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1279 (11th Cir. 2020). Defendants do not address, and the Court declines to consider sua sponte what effect the findings made by the Eleventh Circuit in the Hoffer litigation have on Young's claim in this action.

16

Id. at 1297. Notably, the parties in that case presented evidence that FDOC officials knew that inmates were dying from HCV because they were not being treated, and they acknowledged the lack of treatment was unacceptable. Id. at 1298. Young alleges that the facts underlying the Hoffer litigation show that the abuse was widespread enough to put Defendants on notice. He also alleges that despite being aware of such widespread abuse, "Defendant Jones and her agents [and] employees, as well as Defendant Inch and his agents and employees have refused to provide life-saving treatment to Mr. Young." SAC at 5.

Second, Young argues that the SAC contains "facts sufficient to support the existence of – or from which the Court may reasonably infer the existence of – a custom or policy that resulted in the violation of Mr. Young's constitutional rights." Responses at 7. He alleges that Defendants were/are responsible for the overall operation of the FDOC and had/have a "non-delegable duty to provide constitutionally adequate medical care to all persons" in the FDOC's custody. SAC at 2-3. He asserts that the FDOC has a policy, practice, and custom of refusing to provide HCV-positive inmates, like Young, with lifesaving DAAs, so the FDOC can save money. Id. at 7. He also alleges that "Defendants have implemented a custom or practice of denying care, or shuffling Mr. Young between various channels, responding that his requests must be resubmitted through a different process," yet ultimately denying the

17

request for procedural reasons. Id. at 6-7. Young describes seven written requests for HCV treatment that he submitted between 2015 and 2018, and he alleges that Defendants either ignored those requests or delayed his access to a doctor for months at a time. Id. at 7. He also contends that he submitted multiple requests for the FDOC's written guidelines for treating HCV-positive inmates and that Defendants refused to provide the material. Id. at 9. According to Young, Defendants "have never offered [him] DAAs to treat his severe liver damage," nor have they provided him with "over the counter vitamins or supplements, or other dietary considerations to address the abdominal pain and swelling [he] suffers through as a result of his chronic HCV infection." Id. at 9. Indeed, he contends that Defendants have "altogether denied [him] access to adequate treatment." Id. at 6. According to Young, these facts "satisfy[] the causal connection between Defendant[s] [] and the actions of FD[O]C employees and agents required to state a claim for compensatory damages." Responses at 7.

Viewing the facts in the light most favorable to Young, as the Court must, the Court finds that Young has plausibly pled an Eighth Amendment deliberate indifference claim against Defendants in their individual supervisory capacities. Young's allegations that there is a history of widespread abuse involving HCV-positive inmates and that Defendants were/are aware of a cost-saving policy resulting in deliberate indifference, yet

18

they have failed to take corrective action present a plausible Eighth Amendment claim. See Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1236 (11th Cir. 2010) (finding the plaintiff sufficiently alleged a claim based on supervisory liability because he described a similar incident involving other inmates as well as facts about a custom or policy put in place by the supervisors); Curry v. Inch, No. 4:18cv207-RH/CAS, 2019 WL 4925370, at *7-*8 (N.D. Fla. July 23, 2019) (finding HCV-positive plaintiff sufficiently alleged supervisory claim against Secretary because allegations stated policy, practice, and custom crafted by Secretary resulted in deliberate indifference), rep. & recommendation adopted in part & rejected on other grounds by 2019 WL 4013445 (N.D. Fla. Aug. 26, 2019); see also Gaines v. Jones, No. 3:18-cv-1332-J-39PDB, 2019 WL 1400470, at *9-*12 (M.D. Fla. Mar. 28, 2019) (denying motion to dismiss and finding allegations about unconstitutional policies and historical litigation on deficiencies in treatment of mentally ill inmates sufficient to state supervisory liability claim against Secretary). Thus, Defendants' Motions are due to be denied and the parties will be given an opportunity to further develop the facts.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Doc. 31) is **DENIED**.

2. The Motion to Dismiss Second Amended Complaint by Julie Jones for Failure to State a Claim (Doc. 49) is **DENIED**.

3. Defendants must file their answers to Young's Second Amended Complaint by **March 1, 2021**. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

4. Young's pro se "Sworn Motion Seeking Preliminary Injunction/Expedited Hearing Sought" (Docs. 6, 7) is **DENIED without prejudice**. If counsel for Young finds it appropriate, he may refile the request.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of February, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-7
C: counsel of record